**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1206
_____

GEORGE WILLIAM BLOOD,
Appellant

v.

WARDEN B. A. BLEDSOE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 10-00141)
District Judge: Honorable Richard P. Conaboy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2011
Before: RENDELL, FUENTES and SMITH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 12, 2011)

George William Blood
*Appellant Pro se*

1

Stephen R. Cerutti, II
Mark E. Morrison
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108-0000
*Counsel for Appellee*

_____

OPINION

_____

PER CURIAM

George William Blood, a prisoner incarcerated at the Federal Prison Camp in Lewisburg, Pennsylvania, appeals pro se from the District Court's denial of his habeas petition. Blood contends that the federal Bureau of Prisons ("BOP") miscalculated the aggregate term for his two federal sentences and failed to award him credit due under 18 U.S.C. § 3585(b). For the following reasons, we will affirm.

I.

On February 9, 2004, Blood reported to the Federal Prison Camp in Lewisburg to serve a 60-month term of imprisonment imposed by the Middle District of Tennessee on two convictions for possession of forged securities. While serving that sentence, he was charged and convicted of unrelated offenses in the District of Delaware. Before the Delaware court could sentence Blood, the United States Court

2

of Appeals for the Sixth Circuit vacated his Tennessee sentence in light of United States v. Booker, 543 U.S. 220 (2005). See United States v. Blood, 435 F.3d 612, 616 (6th Cir. 2006).

At a March 13, 2006 sentencing hearing on the Delaware convictions, the Delaware court stated:

> I recognize that by circumstances that are entirely fortuitous . . . not in my control, your sentence in the Middle District of Tennessee has been vacated and that case has been remanded for resentencing. So the time you served to date will be credited to this conviction, so whatever I give you, you have already served a couple years on and it will be to up to a judge [in Tennessee] to decide whether or not the sentence you receive for [your Tennessee convictions] is to be consecutive to the sentence that I give or concurrent with it.

(Habeas Pet. Ex. G-3.) The Delaware court then imposed a sentence of 78 months of imprisonment. On August 14, 2006, the Tennessee court resentenced Blood to 51 months of imprisonment to be served concurrently with his Delaware sentence.

After his Tennessee sentence was imposed, the BOP calculated Blood's total term of incarceration. It considered the Tennessee sentence to have commenced on February 9, 2004 – the date Blood began serving on the original, vacated

3

Tennessee sentence – and the Delaware sentence to have commenced on the day it was imposed, March 13, 2006. The BOP then aggregated the two sentences such that only about half of the Tennessee sentence overlapped with the Delaware sentence, resulting in a combined total term of 103 months and 4 days. In other words, the BOP considered the 25 months and 4 days that Blood served prior to the imposition of the Delaware sentence to count solely toward the Tennessee sentence. After crediting him for seven days spent in custody after his initial Tennessee arrest, the BOP calculated Blood's full term date to be September 5, 2012. His projected release date with good time credit is July 29, 2011.

After exhausting his administrative remedies, Blood filed a habeas petition in the District Court, pursuant to 28 U.S.C. § 2241. He argued that the BOP failed to credit the 25 months and 11 days he served pursuant to his vacated Tennessee sentence (the "disputed time")[1] toward his Delaware sentence. According to Blood, if the BOP had calculated his sentence correctly, he would have been released well over a year ago after accounting for good time credit. The case was referred to a Magistrate Judge who recommended denying the petition. Blood objected to the Magistrate Judge's Report and Recommendation (R&R), but the District Court overruled his objections and denied the

---

[1] That time is comprised of the seven days Blood spent in custody after his arrest plus the time he spent incarcerated between February 9, 2004, when he reported for service of the Tennessee sentence, and March 13, 2006, when he was sentenced on the Delaware convictions.

4

petition.

Blood timely appealed.[2] We ordered expedited briefing in light of his impending release. Specifically, we asked the parties to address the possibility that the BOP's sentencing manual was internally inconsistent, as discussed further below.

## II.

The District Court had jurisdiction over Blood's habeas petition pursuant to 28 U.S.C. § 2241. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of Blood's habeas petition de novo.

---

[2] After the Magistrate Judge issued the R&R, Blood filed a petition for a writ of mandamus in this Court, requesting immediate release. We concluded that mandamus relief was inappropriate but noted that we might consider a renewed petition if the District Court failed to timely rule on Blood's objections to the R&R. Once the District Court ruled on his objections, Blood filed a "renewal petition" with this Court, which the Clerk forwarded to the District Court to be docketed as a notice of appeal. Blood thereafter submitted a letter, which we will construe as a motion that we take judicial notice of the submissions he filed in connection with his prior petition, and a letter motion objecting to any recharacterization of his "renewal" as a notice of appeal. We will deny those motions. Blood's "renewal petition" is most appropriately treated as a notice of appeal because it seeks review of the District Court's judgment. And since his prior submissions duplicate the record submitted in connection with the instant appeal, there is no need for us to take judicial notice of them.

See Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

## III.

Blood contends that the BOP disregarded the Delaware court's intention to credit the disputed time toward his Delaware sentence. We, however, agree with the District Court that the Delaware court's statement, "the time you [Blood] served to date will be credited to this conviction," when read in context, merely reflects the Delaware court's prediction that the BOP would credit the disputed time toward the Delaware sentence under 18 U.S.C. § 3585(b). See Ruggiano v. Reish, 307 F.3d 121, 134 (3d Cir. 2002) ("In interpreting the oral statement [of a sentencing judge], we have recognized that the context in which this statement is made is essential."), superseded on other grounds by, U.S.S.G. § 5G1.3(c) app. Note 3(E) (2003). Indeed, the Delaware court explained that any such credit resulted from "circumstances that are entirely fortuitous, . . . not in [the court's] control," namely, the Sixth Circuit remand. Then, the Delaware court transitioned from the topic of credit by stating, "for what is before me, though, this is the sentence that I intend to impose . . . ," thereby segmenting the court's intended sentence from its discussion of credit.

Furthermore, district courts have no authority to credit time toward a sentence under § 3585(b) – that function rests in the sole authority of the BOP.[3] See United States v.

---

[3] The BOP could have credited the disputed time toward the Delaware sentence, provided the time was not also credited toward the Tennessee sentence, because Blood was arrested for the

6

Wilson, 503 U.S. 329, 333-35 (1992).  We believe that if the Delaware court intended to fashion a sentence that would effectively "credit" Blood with the disputed time, it would have explicitly granted a downward departure in accordance with § 5G1.3(c) of the United States Sentencing Guidelines.[4]

Our conclusion that the Delaware court lacked any specific intent vis-à-vis the disputed time, however, does not answer whether the BOP properly calculated Blood's sentence.  Blood contends that because the original Tennessee sentence was vacated on appeal, his post-remand Tennessee

---

Tennessee charges in 2002, after he committed the Delaware offenses in 2000.  See § 3585(b)(2) (requiring credit for time served "as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed").  That appears to be the calculation the Delaware court envisioned.

[4] In Ruggiano, upon which Blood relies, we authorized district courts to grant credit for time served on a prior undischarged term of imprisonment under § 5G1.3(c).  307 F.3d at 131.  However, § 5G1.3 was amended in 2003 to clarify that subsection (c) does not authorize such an adjustment unless the court grants a downward departure.  See U.S.S.G. § 5G1.3 app. note 3(E).  That amendment was in effect in 2006, when the Delaware court sentenced Blood, and we believe that if the Delaware court had intended to invoke the provision, it would have indicated as much.  See id. ("To avoid confusion with the [BOP's] exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be clearly stated in the Judgment in a Criminal Case Order as a downward departure pursuant to § 5G1.3(c) . . . .").

7

sentence could not have commenced until he was resentenced on August 14, 2006. And since neither the original nor the post-remand Tennessee sentence was in effect at the time he was sentenced by the Delaware court, Blood argues that the BOP was required to credit the disputed time toward his Delaware sentence – despite the fact that he would inevitably be resentenced on the Tennessee convictions – because there was no other federal sentence to which it could be credited. The BOP contends that it correctly treated Blood's Tennessee sentence as commencing on February 9, 2004, in accordance with its internal sentencing manual, Program Statement 5880.28, because the underlying convictions were never vacated and his post-remand Tennessee sentence essentially modified the original sentence. Accordingly, contends the BOP, Blood served the disputed time on the Tennessee sentence and is not entitled to double credit that time toward the Delaware sentence.

In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence. See 18 U.S.C. § 3585. Section 3585(a) states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Pursuant to § 3585(b), a prisoner is entitled to credit for time served prior to the date the sentence commences "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was

8

imposed[,]" so long as the time has not been credited toward another sentence. When a prisoner is serving multiple sentences, the BOP must combine those sentences to form a single aggregate term. 18 U.S.C. § 3584(c).[5]

Section 3585 does not directly address the recalculation of sentences post-remand. However, the BOP has interpreted § 3585 in its internal sentencing manual, Program Statement 5880.28. The BOP's interpretation warrants "some deference" so long as it sets forth a permissible construction of the statute. See Reno v. Koray, 515 U.S. 50, 61 (1995). According to that manual, "[i]n no case can a federal sentence of imprisonment commence [in accordance with § 3585(a)] earlier than the date on which it is imposed." See BOP Program Statement 5880.28, Sentence Computation Manual (July 20, 1999) available at http://www.bop.gov/policy/progstat/5880_028.pdf, at 1-13. However, a portion of the manual interpreting § 3585(b) provides that "[t]ime spent serving another . . . sentence that is vacated merely for resentencing shall not have any effect on [a] sentence computation until such time as the inmate is resentenced." Id. at 1-17. In such cases, "the date the sentence [imposed on remand] begins will be the same as the original computation," id. at 1-18, such that time served on the original sentence is treated as time served on the post-remand sentence. Id. at 1-17. Because the manual appears to prohibit treating a sentence as commencing prior to the date

---

[5] To the extent Blood suggests that the BOP failed to comply with 18 U.S.C. § 3584(c), we disagree. The issue is not whether the BOP aggregated Blood's sentences– it did – but rather, whether the BOP correctly calculated the sentences in accordance with § 3585.

of imposition, yet treats a post-remand sentence as having commenced on the date of the original, vacated sentence, we asked the parties to address that apparent inconsistency.

The BOP explains that the two provisions can be harmonized by understanding how they work together in context. Program Statement 5880.28, like § 3585(a), focuses on the date that a prisoner physically reports to the BOP for service of a federal sentence on a given conviction. When a federal sentence is vacated without disturbing its underlying conviction, the BOP – using a "conviction based" as opposed to a "sentence based" approach – treats the post-remand sentence as commencing on the same date as the original sentence. That is because, practically speaking, "[a] resentencing does not change the date a defendant actually physically appeared and commenced service of a term of imprisonment resulting from a particular conviction."[6] (Appellee's Br. 25.) Blood, however, contends that Program Statement 5880.28 is "contrary to law," because "it is physically and legally impossible for a federal sentence of imprisonment to 'commence' prior to the date a sentence of imprisonment is 'imposed by the court.'" (Appellant's Br. 9.)

---

[6] In contrast, when a defendant serves time on a sentence for a conviction that has been vacated on appeal, but the defendant is resentenced after a retrial, the BOP does not treat the new sentence as a modification of the former, vacated sentence. In that case, the defendant's term of imprisonment commences on the date he was sentenced after retrial, and any time spent in custody on the vacated convictions is credited pursuant to § 3585(b). Program Statement 5880.28 at 1-18.

10

We conclude that Program Statement 5880.28 is a permissible interpretation of § 3585, and that it therefore warrants deference.  See Allen v. Crabtree, 153 F.3d 1030, 1033 (9th Cir. 1998).[7]  We have found nothing in the law that prohibits the BOP from treating Blood's post-remand Tennessee sentence as commencing on the date the original sentence was imposed, nor compels the calculation Blood proposes.  Furthermore, we think it is reasonable for the BOP, from an administrative standpoint, to treat a sentence imposed on remand as a continuation of an initial sentence when the initial sentence has been vacated, but the underlying convictions are undisturbed.  In such cases, there can be no question that the prisoner continues to serve time on the intact convictions despite the need for resentencing.

Certainly, it would be preferable if the language in Program Statement 5880.28 did not appear to be inconsistent.  That the manual could be clearer, however, does not change our conclusion that the BOP's framework is a legitimate exercise of its authority.  To conclude otherwise would lead to absurd results.  Instead of the predictable regime established by Program Statement 5880.28, Blood's proposed method of calculation would result in a windfall to some inmates serving multiple sentences (such as himself) while

---

[7] Although the court in Allen should not have deferred to Policy Statement 5880.28 under Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984), because Policy Statement 5880.28 is only an internal agency guideline, see Tablada v. Thomas, 533 F.3d 800, 806 (9th Cir. 2008); Stiver v. Meko, 130 F.3d 574, 578 (3d Cir. 1997), we agree with its conclusion even under the appropriate, less deferential standard.

other inmates would end up serving a <u>longer</u> aggregate term despite obtaining a reduced sentence after a successful appeal. That is an illogical result that we will not require.

In sum, the BOP appropriately treated Blood's Tennessee sentence as commencing on February 9, 2004, consistent with Policy Statement 5880.28.[8] Accordingly, the disputed time was served on the Tennessee sentence. Since § 3585(b) prohibits double crediting, Blood is not also entitled to have the disputed time counted toward his Delaware sentence. <u>See</u> <u>Wilson</u>, 503 U.S. at 337 ("Congress made clear [in § 3585(b)] that a defendant could not receive a double credit for his detention time."). Because Blood is not entitled to the relief he seeks in his habeas petition, we will affirm the District Court's judgment.[9]

---

[8] Our result is consistent with the Sixth Circuit's treatment of Blood's aggregate sentence. The Sixth Circuit dismissed as moot Blood's appeal of his 51-month Tennessee sentence because he began serving that sentence on February 9, 2004, and had completed his service by the time the case was ready for review. <u>United States v. Blood</u>, 259 F. App'x 712, 713 (6th Cir. 2007).

[9] In light of our disposition, we will deny Blood's motion for immediate release and his "motion for summary affirmance."

12